Filed 1/9/26  P. v. Woods CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHERRI D. WOODS,<br><br>    Defendant and Appellant. | D085646<br><br><br>(Super. Ct. No. SCE428204) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Cherri D. Woods of grand theft (Pen. Code, § 487, subd. (a)) and found true the allegation she suffered a prior strike conviction (§§ 667(b)-(i), 1170.12, 668).  Woods was sentenced to a suspended six-year prison sentence, 180 days in local custody, and two years of formal probation. Appointed appellate counsel filed a brief under *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 indicating he

found no arguable issues for reversal on appeal. Counsel asks us to review the record for error as *Wende* requires. We offered Woods the opportunity to file her own brief, but she has not done so.

Based on our independent review of the record, we find no reasonably arguable appellate issues. We thus affirm.

## I.

### A.

One morning in October 2024, Woods entered a retail store located in Spring Valley, California. As she entered the store, Woods caught the attention of a loss prevention officer observing by camera because she entered "quickly with a bag located in the baby portion of the cart." So the loss prevention officer, as was his custom, continued to watch Woods.

The loss prevention officer saw Woods remove a bag from her purse and put it in the main portion of the cart. He saw her select a jacket, remove the tags from it, and put it on.

After seeing Woods put more items in her purse and in the bag, the loss prevention officer called law enforcement. He informed the dispatcher about the jacket and that Woods had concealed wine, "women's accessories," and clothing in bags. He continued to watch Woods while conveying his observations to dispatch. He told the dispatcher he saw Woods further conceal cleaning supplies, jewelry, "style items," and steaks.

Several deputies responded to the call. While responding, they called the loss prevention officer, who told them in real time what was happening in the store. The loss prevention officer hung up as he tried to approach and contact Woods, but she "swiftly exited the store." He saw her "get into a white sedan and drive off."

After the call with the loss prevention officer ended, the deputies saw a white sedan run a red light "close to the intersection where the [retail store] was." Believing the car may be involved in the theft, the deputies got behind it.

After getting back into contact with the deputies, the loss prevention officer told them about Woods' car, which matched the car the deputies were following. The officers conducted a traffic stop of the white sedan.

Woods was the sole occupant of the white sedan. When asked why she had been stopped, she responded, "I just ran through" the red light. She was cooperative, although she initially claimed not to have stolen anything. The deputies detained Woods, who allowed them to search her car and remove items bearing the retailer's name, but she said the clothing in the backseat was not stolen. After collecting all the items, a deputy transported them to the retail store while the others stayed on the scene with Woods.

When the deputy brought back the bag of goods, the loss prevention officer returned several items to the deputy that were not the store's merchandise; the loss prevention officer recognized everything else in the bag, however, as items he personally observed Woods select and conceal while in the store. The loss prevention officer created a receipt detailing each returned item, including the value and any taxes. Excluding tax and using promotional values for some items, the total value of the goods stolen exceeded $950. The deputy informed his partners.

B.

An amended information charged Woods with grand theft and alleged, among other things, that Woods had a strike prior.

Woods was present for jury selection the first day of trial. The second day of trial was set to start at 9:00 a.m., but Woods was not present and

3

unreachable by counsel at 9:02 a.m. The court waited until 9:15 a.m., at which time defense counsel still had been unable to contact Woods. Over the defense's objection, the court declared Woods voluntarily absent but admonished the jury not to consider that against her. Woods arrived by 9:27 a.m., missing opening statements and the first two minutes of the loss prevention officer's testimony.

The jury convicted Woods of grand theft.

Phase two of the trial was then held as to the strike prior allegation. In 2019, Woods had pled guilty to willful infliction of corporal injury on an enumerated person (§ 273.5(a)) and allegations that she inflicted great bodily injury (§ 12022.7(a)) and used a deadly and dangerous weapon (§ 12022(b)(1)) in committing the offense. The court received into evidence certified records of court documents for both the prior matter and the instant matter, as well as fingerprint cards and mug shot profile face cards for both cases. A trial support specialist with the District Attorney's office with significant experience in fingerprint comparisons offered her expert opinion the fingerprints from both cards came from Woods. The trial court judicially noticed that a violation of Penal Code section 273.5 with section 12022.7(a) and 12022(b)(1) allegations is a strike as a matter of law. (See Pen. Code, § 667.5(c)(8).) The jury found true the strike prior allegation.

C.

Probation recommended Woods serve a sentence of four years in prison—the middle term of two years, doubled for the strike—and the People requested custody. Woods invited the court to strike her strike prior and asked for probation.

During the sentencing hearing, the court offered Woods two options. The first option was to strike the strike prior and accept a two-year prison

4

term.  The second option was for Woods to stipulate to a six-year prison term—the upper term of three years, doubled for the strike—with execution suspended pending two years of formal probation with 180 days of local custody.

After defense counsel and Woods consulted in the hallway, defense counsel informed the court that, "in speaking with Ms. Woods, she would like option number 2, [specifically s]he would like to be sentenced to formal felony probation with 180 days custody with six years ESS."  Based on counsel's representation, the court sentenced Woods to option two.  In imposing the sentence, the court stated Woods "waive[d] any recitation of facts necessary to impose the upper term in exchange for the deal."  The court found an extraordinary and compelling basis to relieve Woods of paying discretionary fines and fees.

## II.

Woods' counsel filed a *Wende* brief setting forth a statement of the case and facts, urging no grounds for reversal, and asking this court to independently review the record for error.  To assist the court in its review under *Anders*, 386 U.S. at pp. 744-745, counsel identified the following issues he considered in evaluating the potential merits of this appeal: (1) "Whether there was sufficient evidence to sustain the jury's true finding as to the prior 'strike,'" (2) "Whether there was sufficient evidence to sustain the jury's finding that the fair market value of the goods taken exceeded $950," (3) "Whether the initial vehicle stop and search violated the Fourth Amendment to the United States Constitution," (4) "Whether [the] trial court erred in finding that [Woods] was voluntarily absent at the start of the trial," and (5) "Whether the trial court erred in sentencing [Woods] to the upper term on count 1 in violation of Senate Bill No. 567."

5

We reviewed the entire record as required by *Wende* and *Anders* and discovered no arguable issues for reversal on appeal.  Competent counsel has represented Woods on this appeal.

III.

We affirm.


CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.